Good morning, your Honors. Jessica Agatstein, Federal Defenders, on behalf of Ms. Veronica Perez. This case is about whether a U.S. citizen can be convicted because the EPA and Customs say they failed to declare pesticides that are legally available in Mexico. It's also about whether the government can order a U.S. citizen to pay $13,000 to throw out about a bag full of pesticides that could have been returned to the store in Mexico for free. A lot of issues in this case. I want to make sure we hit the jury note and restitution as well as your questions. So I'll start with the jury note. So the court answered a jury note wrong in this case. It took out an element. The first element of Section 545 has two components. It has a smuggling component and a failure to invoice, failure to declare component. And the court took one component completely off the table to the jury. And for that reason, this court should reverse. Now, the court also gave an instruction, right? And the instruction was Instruction 11. And that instruction was modeled right after our model instructions, correct? That's correct. And so the jury had in front of them the right instructions, yes? Yes, as well as the wrong instructions. Because you already agreed with those instructions. Correct. And when the answer to that question came, it was smuggling goods or merchandise is a general description for the crime set out. Now, that's true. Yes. That's right in the general statute is comprised of three elements as set out in Instruction 11, right? Right. That's true, including the failure to declare the merchandise for invoicing, knowing the invoice was of a type that should have been declared, and acting willfully with the intent to defraud. That was the answer. Correct. So the jury here asked... What was the wrong part of that answer? The jury asked, is there a distinction between failure to declare and smuggling? And the court responded, smuggling is a general description for the crime. That's legally correct in the abstract, but in response to the jury's question was confusing. It took smuggling off the table. They asked for, are they two distinct things? And the court said, well, smuggling is just a in regard to it was a general description. And then it referred it to jury Instruction 11 to say, in order to get smuggling merchandise, you've got to go for all three elements in 11. And if you look at all three elements in 11, smuggling is right there in number one. So in Castillo-Mendez and Peterson, this court made very clear it's no answer to say that the supplemental instruction was to be read in light of the original instruction. When the court answers a jury note correctly in the abstract, but confusingly in response to a question, this court reverses. And here, the jury was really confused. Is smuggling the same thing as failing to declare? Are you suggesting that smuggling is not just willfully failing to declare something that should have been declared? Yes, that's our argument. And that's because the statute includes both smuggling and failing to invoice. If the court, if Congress wanted this smuggling to be defined as failing to invoice, it probably would have said failing to invoice. It didn't. It said jury instructions say they include both smuggling and failing to declare. And that's the instructions we agreed to in this case. Okay, let me ask you the next question. Did the court's answer change the theory of the case at all? Yes. When I read what you wrote, what the underlying people argued, and I read what the theory of the case was for your client, it seemed to me it didn't prevent your client from making any argument. It didn't change the relevant evidence. The theory was whether he actually declared the chemicals, and if not, did so knowingly that they had not been declared or with intent to defraud. That was the theory. I don't see how it got any change. Defense counsel asked the jury eight times in closing arguments, were these the actions of smuggler? The government responded by saying, yes, these were the actions of smuggler. This was hiding. This was not just failing to declare. It was a hiding. They said that seven times in their closing argument. And that's the prejudice. And the jury thought really hard about this case. They were conflicted about this case as to whether Ms. Perez even failed to declare. But they were not ever, in response to their jury note, they were told, don't worry about the smuggling. Focus on the failing to declare. And even with that component of the first element of 545 off the table, they still did not convict Ms. Perez as to a number of the pesticides charged. Well, it seems to me then that the jury seemed to understand the very point you're making. Your Honor. We found her guilty of the rat poison. So the jury wrote in their second question to the court, if hypothetically we thought she failed to declare some goods but not others, what should we do? And the jury told us exactly how they were thinking, because that's what they did. They focused on the failure to declare, not the smuggling, not the hiding. I'll say this statute would be incredibly broad without the two guardrails Congress put in. One is the smuggling, the act of hiding, and the other is the intent to defraud. Taking those out, you know, the millions of people crossing the border with Mexico and the U.S. every day would be subject to this incredibly broad criminal statute. But if this court doesn't have any further questions, I'd be happy to move on to the restitution issue. So just to be clear, your argument is that smuggling is not failure to declare because smuggling includes failure to declare, you could do accidentally, right? You just forget, whereas smuggling includes a knowing element? Is that? Well, the statute does already have that knowing element separately, but it includes a hiding, includes an act, a hiding. So here's an example. So it seems to me the knowing would include the hiding, but where would the knowing not include? So you failed to declare, let's say, and you knew that you were supposed to, because you're thinking you forgot, like you knew, but you forgot? Is that it? Yeah, here's a helpful example, I think. So I go to Mexico, I buy a new shirt. I put it in my suitcase, where shirts go. So you go to Mexico and what? I buy a shirt. Shirt, okay. Yeah, nice Mexican shirt. I put it in my suitcase, which is where shirts go. And I drive up to the border. At the border, I see the sign that says, you got to declare all goods you bought in Mexico. And I say, I don't have time, I have to get to work, I have to get home. So I knowingly fail to declare. But I'm not smuggling, I'm not hiding the shirts in my suitcase where shirts go. If I had like cut a hole in the seat, and put the shirt in there, that's definitely smuggling. That's that act element. But isn't there another element that says the intent to defraud the United States? So that sweeps that in? Yeah, but the shirt could still be in my suitcase with the intent to defraud, intent to deceive. You know, I'm going up and saying, I know I should declare this, but I got to get home. The smuggling narrows the act to an act of hiding. And I think what's important here... I guess I'm not trying to fight your hypothetical. But like, it seems to me like you could actually just put your shirt in your suitcase, and meet all the elements. But you just hope that they wouldn't, you know, they don't normally search all the suitcases, right? So you're just hoping you can kind of get away. So it's not clear to me. I guess I'm not finding your example real helpful. It is true, you have to have all these things. But didn't it, I thought the court's answer, I'm trying to figure out, it sounds like your disagreement with the court's answer was literally like the word no at the beginning. Because you know, it says is smuggling the same thing as failure to declare? And you think the answer to that, or is there a distinction? You think the answer to that should be yes. Yes. I think the answer... But other than that, it doesn't seem, I'm trying to figure out where the error is. Other than that, because if you go continue reading, even, you don't even have to go to the instruction, but it says, failure to declare, knowing, and willful with intent to defraud. But it doesn't include the act of smuggling. And this court's jury instructions do include... But if somebody's asking if two things are the same thing, and you say that they are the same thing, and one of those things, it does include the act of smuggling. They're not the same thing, to be clear. No, I know, but if the judge wrongly said, in your view, that they're the same thing, then by definition, you are, it does also include the act of smuggling, because you're saying they're the same thing. I understand Your Honor's point. They are two different acts. The smuggling is an act of hiding. The failure to declare isn't saying anything. And those two things are both in this court's model. Jury instructions, they're in the statute as well. And they're in this instruction here. I guess I understand that argument. I understand that argument. And so, that you could fail to declare innocently, so to speak, right? You just forget, right? Or maybe there's other ways. But if that's the argument, then why does not the rest of the answer, without even having to go to the jury, why does not the rest of the answer resolve that? But if the argument is, she's going to be making two arguments, but they seem to be kind of inconsistent to me. Because the other argument is, yeah, but smuggling and failure to declare, the judge was just wrong. They're not exactly the same thing. And you have to, and the smuggling element is missing from the rest of that stuff. But it's actually saying they're the same thing. So how is the smuggling element missing? Like, it's built into the fact that he's, in your view, wrongly saying it's the same thing. I think because failing to declare doesn't involve an act of hiding. And I, more importantly. It's just failure to declare, knowing, and acting willfully. I mean, those three things together would seem to involve hiding, right? I don't think so. Because, and I think more importantly, whatever exactly smuggling means, it's in the statute. It's in this And by taking that off the table, I think that's real erroneous. I see I'm running low on time, and I do want to get to restitution. And I want to answer your questions about that. So I think the restitution here has a lot of problems. What's the standard of review for me, Henry, in looking at this restitution order? De novo on the law, for whether he got the law right. And that's our argument. De novo on whether it was caused? Correct. De novo on whether this was a cost of prosecution. And after that, if it has nothing to do with caused, but we're talking just simply about the calculation of the restitution, at that point, given that there was no objection, it's plain error, right? We disagree in our briefing, but I think more importantly, it would be plain error. Well, I was going to say, you may disagree in your briefing, but it is plain error. I want to focus on the fact that it would be plain error. And that's because in Tose and Wachneen, this court made clear that if you're going to go with an estimate, not even an actual loss, you've got to be real sure, you've got to be formal about it, and an email estimate is not enough. Well, I'm not sure. It seems to me that in Doe, we said we will uphold an award of restitution if the district court is able to estimate, based on the facts in the record, the amount of the victim's loss with reasonable certainty. Right, and here... You're saying that on plain error review, I can't find there was reasonable certainty on this estimation? That's what this court did in Nicolene, in a published case. I understand what they did there, but I don't think that case at all resembles the facts in this case. So a court can estimate, but it's got to do that based on... Well, that is an estimate, and it was supplied by a person who could estimate. And that court looked at it and said, well, okay, with reasonable certainty, I guess I can put that on there. And I'm now on plain error review. I appreciate you may want me to second guess and say what I think, but that isn't plain error review. Your Honor, this court has found otherwise, and I want to be... All the cases you cite for otherwise do not represent the facts here. Okay, I understand your disagreement. I'd like to reserve the remainder of my time for rebuttal unless this court has any final questions. I'd like you to, so that the government can respond, I'd like you to think about this, the only thing I can really talk about with any where I have to make the decision, the cause. How can you say that this taking this, if you will, these illegal drugs and disposing them was not caused by her? I'll say they're pesticides, not drugs. I'm just trying to say they're illegal. Okay, all right. Yeah, I don't know how you can say this cost was caused by Ms. Perez rather than... How can you not say it wasn't? I mean, she brought it. So the EPA has a... It isn't a matter that she didn't bring it. They have, on them finding it, they had to take it, and they had to destroy it. So they didn't have to. The standard process under their own regulations is that they have to offer the importer between 30 and 90 days to make a choice about what to do with pesticides that are not allowed into the United States. The importer's choice can be to export those pesticides back to Mexico at no cost to the government. And the government, in its briefing, says that the only reason they give for holding on to the pesticides is to prosecute Ms. Perez, which, of course, they can do. But this court in Salcedo-Lopez made very clear the cost of prosecution can't form the basis of a restitution order. I see I'm very much out of time. I'll give you another two minutes for rebuttal. Okay, thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Jacqueline Stahl for the United States. Picking up where my colleague left off, this was absolutely caused by Perez's conduct. As the district court explained, it is undisputed that. Is this an actual cost? This was an estimate, right? As to the amount? Yes. It was an estimate from the contractor. It's so hard to say an estimate was caused, I feel like. The cost of, I understand. I apologize for the confusion. The cost of disposing of this hazardous waste. If the estimate was true and it actually had happened, then it would have been caused, is what you're trying to explain. But we don't even actually really know how much the government actually spent, right? Because the government's still holding the pesticides as evidence because this is an ongoing case, an ongoing appeal. Okay. Correct, Your Honor. I think what's important to remember here is that this was a criminal case. So my colleague mentions the CFR. When someone tries to legally import pesticides, they have to file a notice of arrival. The EPA has the chance to decide whether these can come in. And then the EPA, if they say no, allows the exporter to remove them from the country legally. Perez's conduct took this into the criminal code, the United States code. The government sees these items as part of a crime. And whether or not she was prosecuted, the government had to dispose of this hazardous waste. Suppose that she brought these pesticides to the border and the border agent asked, do you have anything to declare? And she shows the pesticides and is here, I'm going to go home and use them. And the border agent looks at it and says, no, you can't import these to the United States, takes them away, and then has to dispose of them. Could the United States then seek restitution from her for the cost of disposing of them? Because she declared it, then that would take this out of the criminal context. She wouldn't have been convicted, so there wouldn't be something to tie the restitution. But in this case, the jury got this kind of odd response in the jury verdict form where they say, we find her guilty of the ones that maybe she didn't declare and she tried to hide in her purse. But the later ones where she said, yes, I have additional materials in the back of my car, it seems like the jury said, no, that was not, she was not guilty of that offense. So with respect to those later items, I mean, can the government seek restitution for those? Yes, Your Honor, because this was a one-count indictment. So there was only one count of conviction, so the jury's note doesn't have any legal effect with respect to whether or not she's been convicted. And as the district court explained, it's undisputed that all these items were in the car. And so here, giving restitution for the full amount is appropriate. If we look at the jury's note, it's also clear that they weren't grappling with whether she smuggled, whether these were hidden. The rat poison was hidden in her purse. The other pesticides were hidden in a secret compartment behind her daughter. These were surreptitiously hidden. But she did declare them when they asked. I mean, the first one, she tried to, you know, deny it. And then afterwards, the agent asked, well, do you have anything else to declare? And she says, yes, it's in the back of my car. So it seems like the jury said the first one, yes, guilty, and the government can seek restitution for getting rid of those. But the others in which the jury said no, I mean, it seems like that wasn't a criminal conduct, according to the jury. The government wishes we had done a better job arguing and closing that it was the failure to declare at primary. So I think that would have cleared up some of that confusion for the jury. But even taking if they – I go back to the fact that there was one count of conviction and that the judge found that all of this was related to that one count of conviction. She smuggled and – So even if, say, there was no disposal cost for, you know, instead of being two different types of pesticides or rat poison, whatever they were, there are two different types. Like the first one, the one that the jury was clear, we convicted her of something that had no cost for the government to dispose of. Gold is valuable. I don't know. And the second one is, yeah, say it was cash, you know, like a bunch of money. And the other one, so it has no cost for the government to dispose of. And if they made that clear, you would still say that they had the fact that we're going to have to spend money on the thing that the jury did not convict her of smuggling. Well, 545 also allows for forfeiture. So if it was gold or money, the government would have included – No, but my point is don't get caught up in the gold. That's just to show that, like, if they convict her of something that had no cost to it, you would say, and all of the cost, the $13,000, was attributable to the item that we know the jury did not convict her of actually trying to smuggle. You would still say that she should have to take – does she still have to pay for that? It seems from your hypothetical there would have to be two different counts. If we're talking – No, but as I said, just assume – stop fighting hypotheticals. Assume there's one count and, like, you know, it was gold pesticide. All right, that's really valuable pesticide, but, like, it doesn't have any cost to dispose of it for whatever reason. And so we know that all of the disposal costs are for the thing that the jury made clear she was not convicted of. I'm not sure that one count would mean that she should suffer, especially under the standard for restitution. The standard for restitution, the government has to show that it's actually going to experience these costs. And we don't know. Like, we don't know how much of the costs are attributable to the one. If I'm understanding that hypothetical correctly, it's that you're saying they're all one count, but, for example, the rat poison here didn't cost any money to dispose of and the other pesticides did. If all the cost was attributable to that, then would you still be able to get restitution for something that she was not convicted of actually smuggling? Yes, Your Honor, because all of these were included in her car. As the district court explained, now the government has a duty and obligation to dispose of them, and it was a direct result of her conduct. Let me go at this a little bit different. Again, that's why I started out with the standard of review. It seemed to me that if we find that it was caused, and if the statute suggests cause, and the case law suggests cause, it wouldn't matter after that what was disposed of or what wasn't to us if we're only on plain error review. We would only be able to say, did the court plainly err in what they suggested? If the cause meets the statute, that's the only place we can stick our nose in, if you will. We're only there for the legality, the cause. After that, it's an abuse of discretion what the judge did, but in this instance, it's not even that. It's plain error review. Isn't that the way we have to look at this? Yes, Your Honor. I agree with that. And maybe the Phillips case is instructive here regarding the cause issue. In that case, it was an environmental spill. There was investigatory and cleanup costs, and this court explained that because it's not a normal part of the prosecution cost, if it's a direct and foreseeable result of the defendant's conduct, then that is entitled to restitution. Maybe this kind of, I think, relates to Judge Smith's question and my question, because it kind of is a cause issue. What I'm trying to get at is a cause issue. Let's say she drove up and they asked her, and she did declare. Some senators say, oh, you can't bring that. That's completely forbidden, and so they take it from her. But I think, as you said earlier, she wouldn't have to pay any restitution cash for that stuff they took. But then it turns out that there's something she didn't declare, and they take that from her, but that thing doesn't have any disposal costs, which seems to me is kind of how we ended up, given what the jury wrote on it. It just happened in the other order, according to the jury, right or wrong. I understand that you don't agree with the jury, but right or wrong, it seems that the jury basically thought she declared some of it and she didn't declare others. But under the hypothetical I'm giving, where she declared that stuff, could they charge her on the restitution for the stuff that she had declared? Could you charge her for restitution? To use what Judge Smith's talking about, would you say that that caused the cost? I apologize. I'm not sure I'm following. So you declare half the stuff, and they take it. They take it because it's not allowed. But they also catch you in some other stuff, which they take, but has no cost to actually dispose of that stuff for whatever reason. And are charges brought to the not to? Your charge is brought on the second. You convict her, and then you try to get restitution for all of it, excluding the stuff she declared. That would be appropriate, Your Honor. That would be appropriate? Yes. Okay, it seems to me like that would have to be under your argument because essentially what happened here just happened the other way around, according to the jury. The jury thought that she – why would that be appropriate? If I may interject and you could answer. Basically, the nub of it seems to be the government is trying to seek restitution for non-criminal conduct filed by the jury. And regardless of the standard review, I think that just seems error for the government to seek restitution for something the jury said that is not criminal. But the jury did find it criminal. The jury found one. For the one of it, I understand that act of the pesticides. But the rest, they said it's not criminal, yet the government is trying to seek costs for both of them. And that's the one that I find baffling. But the indictment reads the importation of merchandise, Mexican pesticides, to wit and then includes a descriptor. That was an indictment, but the government didn't prove it. The government lost. I mean, the government can indict someone for all these things. If they don't prove it, they lost. And the jury said it's not criminal. Well, that's why I'm asking the hypothetical because, I mean, you're saying – on one hand, you're arguing, and I understand it, no, it covers it all because it's one indictment. But that's why I ask you the hypothetical because if she had declared, I don't think you could have that argument that, like, the stuff that she had declared. So if we were to conclude, contrary to what you're saying, that, like, some of these pesticides she was not convicted of smuggling, and so that's my hypothetical, that she, like, let's assume she just voluntarily declared them. But you just said that even so they would be able to charge her. I think your argument is because she was convicted of other stuff, even though the other stuff say there was no cost to. Why would they be able to do that? Because it was all part of one incident. So, for example, the case involving the spike strips and the damage to the car, the Alvarez case, this was a transportation of aliens case. Border Patrol intervened in cause, put out spike strips, and it destroyed the car. Then the rental company was entitled to restitution for that. That wasn't a cost cause. You could argue under your hypothetical that wasn't criminal conduct that the defendant engaged in. She didn't crash the car. But her criminal conduct was transporting aliens, and that led to the destruction of the car. Here her criminal conduct was importing Mexican pesticides, which is hazardous waste, which the government, whether or not they prosecuted, would have had to pay. So here it's not the fact that what she was convicted of or not, it's that she brought in illegal pesticides, she was convicted of that crime, and the government is now on the hook for disposing of that hazardous waste. So maybe expanding on your hypothetical, if at primary she had declared these pesticides and said, I have these pesticides in my car, and the CBP officer said, you can't bring those in, CBP officers turn people back around. You can't bring those in. Go out. Let's assume that they just took them. I understand because then there would be no cost to dispose under that hypothetical. Let's just assume they took them. I'm not following the idea that, like, if there was thousands and thousands of things that were declared, and it turns out that there's, like, one fell in the, you know, or one is in the back or something, or one's in her purse, and somehow you're saying, well, the fact that she didn't declare one of them means that all the other stuff that she declared and got taken away and they wouldn't normally be able to get restitution. Now they get restitution for all of it because she caused, you know, because her illegal conduct caused them to take them. But I don't see how her illegal conduct caused the vast majority in this hypothetical of the cost. And if that's true, then in this case, since we don't know how much of this, this $13,000 is for all of it, right? We know that the rat poison in her purse that she was convicted of is the $9,000. So it is the bulk of the cost because it's poison. So it has to be incinerated under very strict limitations. For example, in the PSR, the agent explained why it was so dangerous she had it in her purse.  Could have gotten trapped in the purse. Could have activated the rat poison, creating a deadly gas and killing her and her daughter. So the $9,000 is for the more poisonous substance that was in her car. But she was smuggling Mexican pesticides. It was one crime. It was all of the pesticides that were not allowed to be brought in. It was undisputed that she didn't file a notice of arrival for any of that. And for restitution purposes, the standard is preponderance of the evidence and then how to prove the amount is reliability. Here, there is nothing unreliable about the government's estimation. And by preponderance of the evidence, the district court appropriately found that it's undisputed all of this was in the car, that it's undisputed the government now has an obligation to dispose of this hazardous waste, and it is undisputed that this was caused because of her conduct bringing this into the country. Just one clarifying question. You said the materials have not been destroyed yet? Correct, Your Honor. Okay, good. Thank you. We attempt to keep all evidence until a conviction is final after appeal. So as I understood it, the estimate is what the cost would be once destruction would happen. Yes, Your Honor. If the court has no further questions, the United States respectfully requests that this court affirm. Great. Thank you. Could you address that she said that the $13,000 can be split? Can you address that? Do you agree with that? Yeah. So the Supreme Court and Huey made clear that the specific conduct, that's the basis for the offense, is what forms the basis of restitution. So I think here the jury made pretty clear what they thought the specific conduct that was the basis of the offense. Well, that depends on whether you take your idea of what the basis of the offense was or what they were charged of. The jury found your client guilty. I just didn't think that your client was guilty of all the things the government thought, but she was nonetheless guilty of one count. And as a result of her coming to the border with all of that stuff, the government has to destroy it. If she would have come and declared it all, she'd have a different view. But she didn't. So the Supreme Court took a different approach in Huey and said this. Well, I looked at Huey and I don't believe that. Why is Huey different? Because Huey made clear it's the specific conduct that is the basis of the offense. I understand. The specific conduct here is how you label the specific conduct. You just want to label it that conduct about that rat poison. But the conduct could be bigger than that. The jury said otherwise. I don't know that the jury said otherwise. Your argument is that. I just want to understand your argument. Yes, it's the basis of the jury note there. All right. I do. There are two other. I'm sorry. I'm sorry if I misunderstood. No, the question was, so I think she said 9,000 of the 13 was attributable. We know that 9,000 was attributable to the rat poison, which is what the jury did convict her. So do you agree with that? That's what's in the estimate. It appears from that, you know, to decipher the estimate, that's as best I could. So, yes. Then your argument would be that that estimate is not specific enough or, you know, the same other arguments you have about it. But you don't disagree that in theory you could split the two up? Yes. Yeah. I will say I'm kind of shocked the pesticides haven't been destroyed, in part because the restitution statute allows restitution for losses, not future losses. So the government, as I understand it, has not obtained any loss yet. And that's the problem with relying on estimates. I will also say. Have you ever been in a criminal procedure where the government still has not disposed of stuff and where then the district court or any court has said the government then cannot get restitution? I have actually. We do not do a lot of restitution practice in our district. I was on the district court. Many times the government would come in. They haven't quite disposed of everything, but they have a reasonable estimate. That's why we have that case, and that's why I cited it to you. It's the reasonable estimate based upon the facts, the amount of the loss with reasonable certainty. That's why you have that case, though. As far as I understand it, the government yet hasn't obtained any loss. Okay. So my third point here is under the EPA regulations,  the EPA still has the obligation to hold pesticides that you did not declare in advance, you did not follow the system. It still has the obligation to hold those and allow you to export them. That's 19 CFR 12.113B that's cited in our briefing. I do want to be clear here. Under its own regulations, the EPA and CBP could have chosen to let Ms. Perez turn around or another member of her family who lives in Mexico, pick up the bag of groceries, drive the 15 minutes to the feed store, and return them with the receipt she still had where they're legal to use, legal to have, and legal to sell. And so in this case, I've yet to hear any reason where these pesticides are not held as being the cost of prosecuting her. The government, of course, is entitled to prosecute her and hold them, but Salcedo-Lopez says her conduct did not cause the loss. It was the government's choice. Great. Thank you. Thank you, both counsel, for the very helpful argument. The case has been submitted.
judges: SMITH, LEE, VANDYKE